UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

TROVER RICHINS,

                Petitioner,

      vs.

JOSEPH SMITH,[1] Superintendent,
Shawangunk Correctional Facility,

             Respondent.

No. 9:07-cv-00802-JKS

MEMORANDUM DECISION

Petitioner Trover Richins, a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254.  Richins is currently in the custody of the New York Department of Correctional Services incarcerated at the Shawangunk Correctional Facility. Respondent has answered and Richins has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

Richins was convicted, after a jury trial, in the Albany County Court of two counts of Assault in the First Degree (N.Y. Penal Law § 120.10(3)), two counts of Reckless Endangerment in the First Degree (N.Y. Penal Law § 120.25), one count of Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree (N.Y. Vehicle and Traffic Law § 511(1)(a)) and one count of False Personation (N.Y. Penal Law § 190.23).  The Albany County Court sentenced Richins, as a second felony offender, to definite concurrent prison terms of 25 years, plus 5 years' post-release supervision for each assault count, to run concurrently with an indeterminate prison term of from 3½ to 7 years for each of the reckless endangerment counts.

---

[1] Joseph Smith, Superintendent, Shawangunk Correctional Facility, is substituted for Darwin LaClair, Superintendent, Great Meadow Correctional Facility.  Fed. R. Civ. P. 25(d).

Richins was sentenced to time served on the remaining counts.  Richins timely appealed his conviction to the Appellate Division, Third Department, which affirmed his conviction, and the New York Court of Appeals denied leave to appeal on August 4, 2006.[2]

The Appellate Division summarized the facts supporting Richins's conviction:[3]

> Evidence at trial established that defendant, whose license had been suspended, was fleeing from the police officer to avoid arrest for an outstanding parole warrant.  He was traveling at high rates of speed through residential and city streets at night-at times in excess of 80 miles per hour-despite repeated pleas by his passenger to stop the vehicle and let her out.

> During the chase, in addition to ignoring the police officer's flashing lights and sirens, he traveled in the opposite lane of traffic on a major city thoroughfare, picked up speed in an area where traffic grew heavier, swerved around vehicles in an effort to avoid detention and neither stopped nor slowed at intersections and traffic signals.  Defendant twice spun out of control during the chase, skidded sideways at one point and turned off his headlights at another point.  He finally lost control while attempting to swerve around yet another vehicle causing him to cross the median and crash into the minivan.

Richins timely filed his petition for relief in this Court on August 6, 2007.  Subsequently, Richins filed a motion for a writ of error *coram nobis* in the state courts and requested a stay of this action pending the outcome of that motion before the state courts.[4]  The request for a stay was denied without prejudice to renew.[5]  Richins renewed his motion to stay.[6]  Richins then filed a motion to amend his petition to assert the grounds raised before the state courts in his error *coram nobis* proceedings.[7]  Richins's motion to stay was denied as moot,[8] and his motion to

---

[2] *People v. Richins*, 814 N.Y.S.2d 816 (N.Y. App. Div.), *lv. denied*, 855 N.E.2d 808 (N.Y. 2006) (Table).

[3] *Richins*, 814 N.Y.S.2d at 817–18.

[4] Docket No. 16.

[5] Docket No. 21.

[6] Docket No. 22.

[7] Docket No. 24.

[8] The state courts denied his motion for a writ of error *coram nobis*.  *See People v. Richins*, 893 N.E.2d 453 (N.Y. 2008) (Table).

amend denied on the basis that the newly asserted claims would be barred by the one-year limitation period under AEDPA.[9]

## II.  ISSUES PRESENTED/DEFENSES

In this petition Richins raises four grounds:  (1) a peremptory removal of a prospective female African-American juror in violation of *Batson*;[10] (2) denial of a fair trial in that the Albany County Court impermissibly permitted the introduction of prior drug convictions under *Sandoval*[11] and prosecutorial misconduct in referring to the drug convictions; (3) insufficiency of the evidence; and (4) ineffective assistance of counsel.[12]  Respondent contends that the first ground, part of the second ground (prosecutorial misconduct), and the third ground are procedurally barred as the Appellate Division found those claims were unpreserved for review. Respondent asserts no other affirmative defense to the four grounds raised in the petition.[13]

## III.  STANDARD OF REVIEW

Because Richins filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision, or "was based on an unreasonable determination of the facts in light of the evidence

---

[9] Docket No. 26.

[10] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[11] *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974).  (*Sandoval* is a short-hand reference to the procedure under New York law under which the trial court determines in advance whether evidence of prior convictions is admissible.)

[12] Although he raised a fifth ground before the Appellate Division, *i.e.*, that the sentence imposed was harsh and excessive, he has not raised that ground in his petition before this Court.  Even if Richins had raised this ground, no federal constitutional issue is presented when, as here, the sentence imposed by a state court is within the range allowed by state law.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

[13] *See* Rules—Section 2254 Cases, Rule 5(b).

presented in the State court proceeding."[14]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[15]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[16]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[17]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[18]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[19]

In applying this standard, this Court reviews the last reasoned decision by the state court.[20]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[21]

To the extent that Richins raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal

---

[14] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70–73 (2003) (explaining this standard).

[15] *Williams*, 529 U.S. at 412.

[16] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[17] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[18] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[19] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[20] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

[21] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

law.[22]  A federal court must accept that state courts correctly applied state laws.[23]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[24]  A federal court may not issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[25]

IV.  DISCUSSION

Ground 1:  *Batson* Claim.

The prosecutor peremptorily challenged two African-American women, juror number 16 and juror number 20, and defense counsel interposed a *Batson* objection.  The following took place before the Albany County Court:[26]

THE COURT:        Perempts, Ms. Boland?

MS. BOLAND:       Thank you, Your Honor. 11, 12, 15, 16, 18, 19, 20.

THE COURT:        Anybody else?

MS. BOLAND:       That's it, Your Honor.

THE COURT:        Mr. Lynch?

MR. LYNCH:        Judge, before I make my challenge, it's clear that Juror Number 16 is a black female, as well as Juror Number 20 is also a black female, and I think it is incumbent upon the prosecutor to put on the record a basis for the challenges, because we now have two black females who have been taken out on peremptory challenges, when it did not appear from voir dire that there was anything said that would indicate that they were not otherwise qualified to be jurors.  I think from the Batson analysis of the case, it is incumbent upon the prosecution to put on a basis for the challenge.

---

[22] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[23] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[24] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

[25] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[26] Docket 11-2, pp. 79–81.

THE COURT:          I'm going to ask the District Attorney with regard to Jury [*sic*] Number 20 to place the objective reason on the record.

MS. BOLAND:          Well, Jury [*sic*] Number 20 is a single mom, unemployed, two sets of twins.  That's basically my reason, I think.

THE COURT:          Okay. And that challenge, Batson challenge, is granted.  Did she say anything else?

MS. BOLAND:          Well, no, Your Honor.

THE COURT:          Okay. You wish to be heard?

MR. LYNCH:          You granted my challenge on Number 20, so Number 20 stays?

THE COURT:          Yeah.  Number 16 I found to be **--** the reason is the profile of the person.  She seems to be very much defense oriented in terms of what she may want to do, and I could have easily understood how I would have knocked her off, if I was the prosecutor in the case.  I did not find anything of a similar nature with regard to Ms. Arrington.

Do you have anything more, Ms. Boland?

MS. BOLAND:          No, Judge.

THE COURT:          Mr. Lynch, anything further?

MR. LYNCH:          Yes, I have some challenges.

THE COURT:          On the Batson?

MR. LYNCH:          On the Batson, no, Your Honor.  So 20 stays?

In her initial voir dire, Juror No. 16 stated:[27]

PROSPECTIVE JUROR:     My name is Deborah Turpin.  I work for the City of Albany for Family Services as a job developer, and I also am a program manager, substance abuse, mental health.  My son is 30 years old.  I live in Albany.

Richins argues that the County Court erred in not requiring the prosecutor to articulate her reasons for exercising a peremptory challenge of juror number 16.  The Appellate Division declined to address this ground, holding:[28]

---

[27] Docket No. 11-2, pp. 29–30.  The record before this Court does not contain any additional information concerning this juror.

[28] *People v. Richins*, 814 N.Y.S.2d 816, 818 (N.Y. App. Div.), *lv. denied*, 855 N.E.2d 808 (N.Y. 2006) (Table).

Moreover, defendant's contentions that the People committed a *Batson* violation during voir dire [citation omitted] and overstepped the bounds of the *Sandoval* ruling thereby depriving him of a fair trial are unpreserved for review (*see* CPL 470.05[2]).  Moreover, we decline to reverse defendant's conviction in the interest of justice on either of these unpreserved issues (*see* CPL 470.15[3][c]).

Respondent argues that Richins's *Batson* claim is procedurally barred.  The Court agrees. Under the adequate-and-independent-state-ground doctrine, federal courts may not review the judgment of a state court that "rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."[29]  Because this doctrine applies on federal habeas review and because the state-law ground may be a procedural bar,[30] federal habeas courts often speak of an "adequate and independent procedural bar" to federal review of a claim or simply of a "procedurally barred" federal claim.  A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment "rests on a state law ground that is independent of the federal question and adequate to support the judgment."[31]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[32]  Where a decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion," habeas courts presume that there is no adequate and independent state law ground supporting the judgment.[33]  Finally, "[s]tate courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."[34]  Accordingly, a procedural bar

---

[29] *Harris v. Reed,* 489 U.S. 255, 260 (1989).

[30] *Id.* at 261–62.

[31] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[32] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992) (citation omitted).

[33] *Coleman*, 501 U.S. at 735.

[34] *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982).

will be deemed "adequate" only if it is based on a rule that is "firmly established and regularly followed" by the state in question.[35]

The Second Circuit has laid out three clues to follow to classify the decision as either fairly appearing to rest primarily on or interwoven with federal law, or as resting primarily on state procedural law:  (1) the face of the state court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances.[36]  There is no question that the Appellate Division explicitly invoked the state procedural rule as barring review.  New York's contemporaneous objection rule to preserve appellate review, N.Y. Criminal Procedure Law § 470.05(2), is an adequate and independent state procedural rule precluding review.[37]

In this case, when given an opportunity to object to either the procedure followed (that the court provided the race-neutral basis *sua sponte* instead of requiring the prosecutor to provide it) or the adequacy of the basis itself, counsel for Richins declined to address the issue further. Given the lack of any objection or comment by counsel, the trial court was not provided the opportunity to correct its error, if any.  "It is well-settled that a defendant may default on a *Batson* challenge if he does not timely object."[38]  In this case, although Richins unquestionably raised the *Batson* issue timely, he failed to follow through when given an opportunity to object to the court's ruling.

To avoid this bar, Richins must demonstrate cause for the default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice.[39]  There is simply no allegation, let alone evidence, that the jury was unrepresentative, biased, or otherwise unfair.[40]  First, prior to raising his *Batson* objection, other than to note that two of the

---

[35] *Ford v. Georgia,* 498 U.S. 411, 423–24 (1991).

[36] *Jimenez v. Walker,* 458 F.3d 130, 145 & n.16 (2d Cir. 2006).

[37] *See Garcia v. Lewis*, 188 F.3d 71, 78–79 (2d Cir. 1999).

[38] *United States v. Thomas*, 303 F.3d 138, 142 (2d Cir. 2002).

[39] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[40] *See Allen v. Hardy*, 478 U.S. 255, 258–60 (1986) (declining to apply *Batson* retroactively because it did not undermine the defendant's right to a fair trial).

jurors peremptorily challenged were African-American females, trial counsel made no *prima facie* showing that the circumstances gave rise to an inference that the members of the jury were being struck because of their race.[41]

Second, Richins bears "the burden of articulating and developing the factual and legal grounds supporting his *Batson* challenge before the trial court."[42]  A defendant may establish a *prima facie* case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.   To establish such a case, the defendant must first show that he is a member of a cognizable racial group,[43] that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race, and that the facts and any other relevant circumstances give rise to an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.[44]  All that is apparent from the record is that in the first round the prosecutor peremptorily challenged seven jurors, two of whom were African American, and in the second round four more, as to whom race does not appear in the record.  There is nothing in the record to show how many African-Americans were in the total venire, how many challenges the prosecution used against African-American jurors, or whether any other challenged African-American jurors possessed race-neutral characteristics that would disqualify them from service or render them undesirable jurors.  The Court cannot determine how many non-white jurors were challenged or their proportionality to total challenges, which of the prosecution's challenges were exercised against non-white jurors and which against white jurors, or the ultimate racial composition of the jury.  Thus, at this stage, it cannot even be determined that *Batson* applies.

Given the state of the record, it is impossible for this Court to find that Richins suffered any prejudice as a result of the action by the Albany Count Court in interposing its own reasons for rejecting Richins's *Batson* claim.  Richins is not entitled to relief under his first ground.

---

[41] *See Hernandez v. New York*, 500 U.S. 352, 358–59 (1991).

[42] *Overton v. Newton*, 295 F.3d 270, 279 (2d Cir. 2002).

[43] The record indicates that Richins is an African-American.  Docket No. 11-2, p. 34.

[44] *Batson v. Kentucky*, 476 U.S. 79, 96 (1986).

Ground 2:  *Sandoval* Claim.

Richins argues that the trial court's *Sandoval* ruling was erroneous because its prejudicial effect allowed the prosecution to portray Richins as a drug dealer, and outweighed any probative value in this case, which had nothing to do with drugs.[45]  Richins further argues that the prosecutor abused the court's *Sandoval* ruling in her questions at trial, and her reference to the drug convictions in her summation constituted prosecutorial misconduct.[46]  The Appellate Division summarily rejected Richins's position *vis-a-vis* the *Sandoval* ruling, stating:[47]

> Next, we find no abuse of discretion in County Court's *Sandoval* ruling permitting inquiry into two previous drug convictions as these convictions were indicative of his willingness to place his own interests above those of society [citations omitted].

Both the trial court and the Appellate Division held that the drug convictions "were indicative of [Richins's] willingness to place his own interests above those of society."  To the extent that Richins's argument focuses on the proper application of *Sandoval*, it is an issue of state law beyond the purview of this Court in a federal habeas proceeding.  Consequently, this Court must examine the issue presented on the basis of federal constitutional law, *i.e.*, did the admission of the prior drug convictions transcend some right guaranteed by the Constitution.[48]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[49]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary

---

[45] Before the trial court, Richins simply argued that "the cumulative effect of those two particular drug related offenses will have the tendency to show that the defendant has a propensity to commit a crime."  Docket 11-2, p. 14.

[46] Respondent contends that this aspect of the second ground is procedurally barred.  The Court agrees for the reasons given above with respect to the first ground.

[47] *People v. Richins*, 814 N.Y.S.2d 816, 818 (N.Y. App. Div.), *lv. denied*, 855 N.E.2d 808 (N.Y. 2006) (Table).

[48] *See Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998).

[49] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

MEMORANDUM DECISION
*Richins v. Smith*, 9:07-cv-00802-JKS                    10

rules."[50]  "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial
. . . does not amount to a violation of due process unless the evidence is so extremely unfair that
its admission violates fundamental conceptions of justice."[51]  "Where the prejudicial evidence is
'probative of [an] essential element' in the case, its admission does not violate the defendant's
right to due process."[52]  To amount to a denial of due process, the erroneous admission of other
unfairly prejudicial evidence must have been sufficiently material to provide the basis for
conviction or to remove a reasonable doubt that would have existed on the record without it and
must be reviewed in light of the entire record before the jury.[53]

Under Federal law evidence of prior bad acts may be treated as substantive evidence[54] and
for impeachment.[55]  *Sandoval* addresses impeachment, thus it is unnecessary for this Court to
consider the extent to which the use of prior crimes evidence to show propensity or for other
purposes as substantive evidence might offend the United States Constitution.[56]

While the state court may not structure its procedures to deny a defendant the opportunity
to present a defense and testify on his own behalf,[57] when a defendant voluntarily takes the stand
he waives his Fifth Amendment rights to the extent of opening himself up to cross-examination.[58]
Here, the *Sandoval* procedure assured that the trial court would weigh prejudice against probative

---

[50] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983).

[51] *Dunnigan*, 137 F.3d at 125 (internal quotation marks and citation omitted).

[52] *Dunnigan*, 137 F.3d at 125, quoting *Estelle*, 502 U.S. at 69.

[53] *Dunnigan*, 137 F.3d at 125.

[54] Fed. R. Evid 404(a), (b).

[55] Fed. R. Evid. 608 (evidence of character of truthfulness); 609 (conviction of a crime).

[56] *See, e.g., Estelle*, 502 U.S. at 75 n.5 (reserving the issue); *but see Dunnigan* (suggesting that consistent with *Estelle* use of other crimes evidence might under extreme conditions impact the due process clause of the fourteenth amendment); *Sims v. Stinson*, 101 F.Supp.2d 187 (S.D. N.Y. 2000) (same).

[57] *Rock v. Arkansas*, 483 U.S. 44, 49–53 (1987).

[58] *Portuondo v. Agard,* 529 U.S. 61, 69 (2000); *Jenkins v. Anderson*, 447 U.S. 231, 235–36 (1980); *Brown v. United States*, 356 U.S. 148, 154–57 (1958).

value and limit considerations of probative value to the impact the prior convictions had on Richins's credibility.  The trial court found that Richins's commercial drug conviction showed that he would put his own interest ahead of the public, inferentially reflecting on his credibility, *i.e.*, weighing his own self interest against the community's interest in truthful testimony, he would err in favor of the former.  Bearing in mind that Richins did not preserve any error by a timely objection, Richins had not shown a violation of his constitutional rights.

Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[59]  New York employs a similar rule.[60]

In this case, the evidence was admitted for the limited purpose of showing Richins's disregard of the interests of society.  Richins himself testified on direct to his prior drug convictions.[61]  Richins even testified that he was deliberately trying to evade the police as he was afraid that they would lock him up for a parole violation.[62]  More important to the determination of this ground, however, is the fact that, as described below in connection with Richins's third ground (sufficiency of the evidence), the evidence of Richins's guilt, which is essentially uncontradicted, was overwhelming.  Therefore, error, if any, in admitting this evidence was harmless.[63]  Consequently, Richins cannot show any prejudice as result of the admission of the evidence of his prior crimes.

Admission or exclusion of evidence of prior crimes is left to the discretion of the trial judge under both New York and federal law.  Under the facts of this case, this Court cannot say

---

[59] *United States v. Abel,* 469 U.S. 45, 54 (1984).

[60] *People v. Scarola*, 525 N.E.2d 728, 732 (N.Y. 1988).

[61] Docket 11-3, pp. 36–37, 73.

[62] Docket 11-3, pp. 46–47, 49–52, 60, 64–65, 68.

[63] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

that the decision of the Appellate Division that the Albany County Court did not abuse its discretion in admitting the evidence of the priors was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[64]   Nor can this Court find that the Appellate Division unreasonably applied the correct legal principle to the facts of Richins's case within the scope of *Andrade–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.   Richins is not entitled to relief on his second ground.

Ground 3:  Insufficiency of the Evidence.

Richins argues that the evidence was insufficient to prove his guilt beyond a reasonable doubt and the verdict was against the weight of the credible evidence.   In rejecting Richins's arguments the Appellate Division held:[65]

> Defendant argues that the evidence presented at trial was legally insufficient to support his convictions of first degree assault and reckless endangerment in that the People failed to establish that he acted with depraved indifference to human life.   Defendant's motions to dismiss at the close of the People's case and again at the close of all proof, based on other grounds, were insufficient to preserve this specific claim [citation omitted].   Moreover, we decline to reverse on this ground in the interest of justice [citations omitted].

> With respect to his claim that the verdict on these counts is against the weight of the evidence, upon the exercise of our factual review power [citations omitted], we are unpersuaded.   [The Appellate Division here recited the facts set forth above at p. 2.]

> Given these facts, we are satisfied that the verdict of guilt was not against the weight of the evidence [citations omitted].

Under New York law, the Appellate Division employs two related standards of review—legal sufficiency and weight of the evidence.[66]   Although related, each requires a

---

[64] 28 U.S.C. § 2254(d).

[65] *People v. Richins*, 814 N.Y.S.2d 816, 817–18 (N.Y. App. Div.), *lv. denied*, 855 N.E.2d 808 (N.Y. 2006) (Table).

[66] N.Y. Crim. Proc. Law § 470.15[4](b), [5].

discrete analysis.  Under the sufficiency of the evidence standard, the Appellate Division must determine whether there is a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury on the basis of evidence at trial.  Under the weight of the evidence standard, the court must examine the evidence further.  If based upon all the credible evidence a different finding would not have been unreasonable, the Appellate Division must, giving deference to the jury on credibility, weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.[67]  In determining the weight of the evidence, the Appellate Division determines credibility issues; it must assess the evidence in light of the elements of the crime as charged to the jury.[68]  That is, the Appellate Division "must consider the elements of the crime, for even if the prosecution's witnesses are credible their testimony must prove the elements of the crime beyond a reasonable doubt."[69]

Under *Jackson v. Virginia*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[70] This court must, therefore, determine whether the decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Richins misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[71]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[72]

---

[67] *People v. Bleakley*, 508 N.E.2d 672, 674–75 (N.Y. 1987).

[68] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

[69] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[70] 443 U.S. 307, 319 (1979) (emphasis in the original).

[71] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[72] *Jackson*, 443 U.S. at 324 n.16.

Unlike the Appellate Division under the New York "weight of the evidence rule," this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is simply to determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law. That such evidence exists is clearly established by the record in this case.  Richins bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous—a burden Richins has failed to carry.  Here, the Appellate Division, a state court, found that the weight of the evidence supported conviction of the crimes under state law. Review of that decision is beyond the purview of this Court in a federal habeas proceeding.  The Appellate Division having determined that the evidence met the more stringent New York weight of the evidence test, it cannot be gainsaid that the evidence does not also meet the sufficiency of the evidence test under *Jackson*.  Richins is not entitled to relief under his third ground.

 Ground 4:  Ineffective Assistance of Counsel.

 Richins points to several instances where he contends the performance of trial counsel was deficient:[73]  (1) Failure to object to the trial court's *Sandoval* ruling; (2) permitting the prosecution to question both Richins and the police officer about alleged drug transactions; (3) failure to object to the prosecutor's comments concerning drug transactions in closing summation; (4) failure to request an adverse inference charge based upon the loss by the principal police officer of his notes on his initial contact with Richins; and (5) failure to object to the trial court's *sua sponte* rejection of the *Batson* challenge of juror number 16.  The Appellate Division summarily disposed of this issue without a reasoned decision, simply stating:[74] "Defendant's remaining contentions, including the claim that he received ineffective assistance of counsel and that this Court should reduce his sentence in the interest of justice, have been reviewed and found to be unpersuasive."

---

 [73] The Court notes that Richins did not set forth the facts supporting this ground in his petition as required by Rules—Section 2254 Cases, Rule 2(c).  *See Mayle v. Felix*, 545 U.S. 644, 655–56 (2005). This omission notwithstanding, the Court has looked to Richins's Appellate Division brief to determine his position on this ground.

 [74] *People v. Richins*, 814 N.Y.S.2d 816, 818 (N.Y. App. Div.), *lv. denied*, 855 N.E.2d 808 (N.Y. 2006) (Table).

Because the Appellate Division did not render a reasoned decision on this ground and there is no independent state ground for not addressing it, this Court must address the issue *de novo* on the record before it to determine whether the Appellate Division's decision was objectively unreasonable.[75]

Under *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[76] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[77] Richins must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[78] *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.[79] Indeed, the Supreme Court admonished in *Strickland*:[80]

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even

---

[75] *See Spears v. Greiner*, 459 F.3d 200, 203–04 (2d Cir. 2006).

[76] 466 U.S. 668, 687 (1984).

[77] *Id.*

[78] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[79] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[80] 466 U.S. at 689 (internal citations and quotation marks omitted).

the best criminal defense attorneys would not defend a particular client in the same way.

Richins's first three instances of alleged ineffective counsel all address the same issue: the admission of Richins's prior drug convictions.  As noted above, at most this issue was tangential to the offenses for which Richins was being tried.  The evidence, including Richins's own testimony, provided overwhelming evidence of his guilt.  There is simply no reasonable probability that the outcome would have differed had trial counsel interposed those objections. There is no indication, nor does Richins argue, that the trial judge would have sustained his objections.  More importantly, given the nature of the evidence, had that evidence not been introduced or the allegedly improper questions and comments been disallowed, there is no reasonable probability that a jury would not have convicted Richins.

On the fourth point, the lost notes relate solely to the initial contact between the officer and Richins.  It is argued that these would have cast doubt on the officer's credibility.  This argument stretches credulity beyond the breaking point.  The officer testified that all he wrote on the lost piece of paper was the name and date of birth Richins gave him.  Of particular import to this question is the fact that, except that Richins had no recollection that he gave the officer his date of birth or that the officer told him to "sit tight" while the officer returned to his car, the testimony of Richins was entirely consistent with the testimony of the officer with respect to what took place during the initial contact.  Richins provides no colorable basis for requesting, let alone granting, an adverse inference instruction.

The fifth point, failure to object to disallowance of the *Batson* challenge, is somewhat problematic on the record in this case.  As noted above in the discussion of Richins's first ground, the *Batson* claim itself, there is simply no allegation, let alone evidence, that the jury was unrepresentative, biased, or otherwise unfair.  Although trial counsel may have erred in not preserving the *Batson* claim, the Court need not reach that issue because Richins cannot satistfy the second *Strickland-Hill* prong—prejudice.

This Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Andrade–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Richins has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that defendant's defense was prejudiced, as required by *Strickland-Hill*.  Richins is not entitled to relief under his fourth ground.

V.  CONCLUSION AND ORDER

Richins is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[81]  To the extent the issues raised in the petition were addressed by the Appellate Division, Third Department, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated:  July 10, 2009.

/s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge

---

[81] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).